J. M. WRIGHT, EXECUTOR OF CALHOUN, v. RHODES AND OTHERS.

JUDGMENT-LIEN. A judgment rendered in October, 1865, and recorded in February, 1866, operated as a lien on all lands of the judgment-creditor situated in the county where the judgment was recorded, for four years after the date of registry, and had priority over a mortgage-lien subsequenty created in favor of a third party within the four years; nor

was this priority lost by a failure to re-register the judgment within four years, if suit was brought within this period, to subject the mortgaged property to the satisfaction of the judgment.

APPEAL from Walker. Tried below before the Hon. J. R. Burnett.

In October, 1865, Samuel Calhoun recovered judgment in Walker District Court against Rhodes and wife for one thousand and nine dollars and twenty cents and costs, on their joint note, and had it recorded in the County Court of said county on the 17th of February, 1866.

At the rendition and recording of the judgment, Rhodes and wife owned certain lands in Walker—community property—specified in petition. By the Act of 14th February, 1860 (Paschal's Digest, Article 3963), the recording of the judgment operated a lien on these lands for four years from the filing for record.

In October, 1868, Rhodes and wife mortgaged these lands to defendant, Gibbs; the mortgage was then recorded, and matured the 1st of January, 1869.

In 1867 Rhodes died intestate, leaving his wife surviving, who qualified under the Act of 26th August, 1866 (Paschal's Digest, Article 4648), as survivor of the community, of which the lands in controversy constituted the whole, not exempt by law from forced sale.

On the 3d of June, 1869, Calhoun issued execution on his judgment, which was returned, "No property found," and on the 30th July, 1869, instituted this suit to revive his judgment against K. A. Rhodes, as survivor of community, claiming his lien and its priority over the mortgage to Gibbs, and asking that the land be sold and the proceeds applied, first to the satisfaction of his lien, and then to Gibbs's mortgage. Afterwards, Calhoun died, and Wright was made party plaintiff, as executor, and insisted on the same relief.

Defendant Gibbs answered at the April term, 1871, denying appellant's judgment-lien, and insisting that if he ever had one,

he had lost it by his failure to have his judgment re-registered. B. & J. Eastham intervened at the same term, claiming .that Rhodes owed them the purchase-money for one of the tracts in controversy—specifying it—for which they claimed a lien as vendors, and asked for judgment against K. A. Rhodes, as survivor of community, and foreclosure of their lien.

The statement of facts shows that plaintiff's allegations were fully proven.

Upon the hearing, a jury being waived, the court gave judgment reviving appellant's judgment against K. A. Rhodes, as survivor, etc., but because he had not re-registered his judgment, the court adjudged that Calhoun had then lost his lien, and that he take nothing by this suit, but gave judgment for intervenors, established their vendor's lien, and foreclosed it as to the tract claimed by them.  From these judgments appellant gave notice of appeal, and assigned for error:

1. That the court erred in adjudging that appellant's lien was lost, and in rendering judgment for defendant, Gibbs.

2. In establishing and foreclosing a vendor's lien in favor of intervenors, B. & J. Eastham, in that the proof did not show that the note declared on by them was given for purchase-money of the land as to which they sought foreclosure of lien as vendors.

*Baker & Maxey*, for appellant.  The law provides no mode for reviving judgments against a survivor of community, and the judgment against the wife being void, in that it did not operate upon her separate property, this suit was well brought to revive appellant's judgment, and have the land sold and the proceeds applied first to his debt by priority of lien, under order of the court.  It must be admitted that appellant had a lien on the lands for four years from recording his judgment, which was 17th February, 1866, and that while this lien was in full force Gibbs took their mortgage, with notice of it and subject to it.  It must also be admitted that while this lien was in full force and vitality, appellant in-

stituted this suit 30th July, 1869, for its enforcement, and then had a good cause of action.

These two propositions being true, the only question is, whether he can lose it without any fault of his, and that, too, when he is using every éffort to enforce it. An affirmative answer to this will, it is respectfully submitted, establish a principle hitherto unknown to the profession. If the case had been reached and tried before the 17th February, 1870, then no question could have arisen as to the loss of appellant's lien, or his having a good cause of action that entitled him to the relief sought. But, inasmuch as it was not reached on the docket until 1871, and appellant had not continued his lien by re-recording his judgment, therefore the court held he had lost it. Suppose he had re-recorded it at the end of four years from the first record, then the court must have said that his lien was not thereby continued, because the law of 1860 had been repealed, and the re-registry then could neither create nor continue a lien.

But suppose he could have re-registered his judgment at the end of four years, and thereby continued his lien, but failed to do so, could Gibbs, a subsequent mortgagee, with notice, be heard to complain? We think not, and refer to Hargrove v. DeLisle & Witherspoon (32 Texas, 170), upon this point.

*Randolph & McKinney,* for appellee Eastman.

McADOO, J. The appellant's testator, Calhoun, recovered a judgment in Walker County District Court, against Rhodes and wife. The judgment was recorded in accordance with the Act of February 14, 1860 (Paschal's Digest, Article 3963), on the 17th of February, 1866.

In October, 1866, Rhodes and wife executed a mortgage to F. and S. Gibbs, on all the community lands they had in the county, to secure a debt to them.

No execution was issued in favor of appellant until June 3, 1869.

The court below found, in its decree, that the judgment-lien of appellant was lost, by reason of the repeal of the Act of Feb-

ruary 14, 1860, by the Act of November 9, 1866, and the non-issuance of execution on the judgment within one year; and judgment was rendered in favor of the mortgage-lien of Gibbs and Gibbs.

Is this judgment based on the true construction of the repealing law referred to? We think not. When the judgment was recovered, a lien was secured for four years, without execution, notwithstanding the repeal of the Act of February 14, 1860 (Paschal's Digest, Article 3963), by the Act of November 1866, because that repealing act provides that "no lien upon lands created by judgment under *any former* law, shall be "affected, or the rights of parties in any way impaired by the "repeal of such law."

It was evidently the legislative intention to repeal the law in question as to all future judgments, but in no manner to affect the rights of parties already secured under the repealed law. The language of the repealing law is conclusive, in its plain terms, of such legislative intention.

Now, how stood the lien of appellant created by the judgment recorded under the Act of February 14, 1860? and in what condition were his rights, in reference to this property, when the repealing Act of November 9, 1866, was passed? Why, his lien was alive and active, and so would have continued until February 17, 1870. Execution issued at any time prior to that date would have continued the judgment lien. It actually issued, however, more than eight months before that time expired; and this issuance of execution would hold the lien for ten years from the date of its issuance.

This suit was properly brought to revive the judgment against Mrs. Rhodes, as the survivor of the community, inasmuch as the original judgment did not bind her separate estate, and she had qualified as survivor under Article 4648, Paschal's Digest.

There is manifest error, therefore, in the judgment of the court below, as to the rights of the appellant and the appellees, F. and S. Gibbs.

The judgment of this court must be, that the appellant have his judgment-lien established as a prior lien over that of the appellees, and that the lien of appellees be established as a second mortgage or lien upon the lands in controversy.

We see no error in that part of the judgment which relates to the intervenors, B. and J. Eastman.

The decree of the court below is reversed, and decree rendered in this court, in accordance with this opinion.

Reversed and reformed.

(Opinion delivered September 7, 1873).

---

ON REHEARING.

*Baker & Botts*, for appellants.

*Jackson & Jackson*, for appellee Gibbs.

DEVINE, J.    A judgment was rendered in this case by our predecessors reversing, in part, the judgment of the court below, and reforming the same.    A rehearing was granted by our predecessors, and the case came before the present court on the original and additional briefs presented on behalf of appellant and appellees.    After a patient examination of the question at issue, namely, the existence of plaintiff's lien on the lands in Walker county, as described in the petition filed in this suit, as against the appellees, by reason of the judgment rendered in favor of appellant's testator on the 20th of October, 1865, and his filing the same for record in the County Clerk's office, on the 17th of February, 1866, we are satisfied that the mortgage executed by Rhodes and wife to F. and S. Gibbs, on the 17th of October, 1866, was acquired by F. and S. Gibbs with notice of the prior existing judgment-lien, in favor of plaintiff's testator, S. Calhoun; and that the commencement of this suit, July 30, 1869, making defendants parties, before the expiration of four years from the date of recording his judgment, kept his lien on the land alive, so far as Mrs. Rhodes and F. and S. Gibbs are concerned.

The fact that defendant failed to answer until after the expiration of four years from the recording of plaintiff's judgment, or that he was delayed in obtaining the judgment sought, will not operate to his prejudice. The death of Joseph F. Rhodes, one the defendants in the first suit; the taking of all the community estate by his surviving wife ; the mortgage claim of the defendant Gibbs; the return of " no property " found," by reason of the sheriff refusing to levy the execution on this property (there being none other liable), compelled plaintiff's testator to bring the defendants before the court for the adjudication of the respective rights of all parties, and the pendency of the suit between plaintiff and defendants, did not impair his lien so far as they are interested.

While we differ as to the reasons given for the judgment rendered in this case by our predecessors, we are satisfied that the judgment rendered was the proper one, and we will not disturb it.

(Opinion on rehearing delivered March 30, 1875.)