WILLIAM JACKSON v. GEORGE BUTLER ET AL.

1. JUDGMENT LIEN—STATUTES.—Under the act of 14th February, 1860, "to prevent judgments from becoming dormant, and to create and preserve judgment liens," a judgment recorded 23d November, 1865, became a lien upon the lands of the defendant in the county for four years, irrespective of other acts of diligence in issuing execution, &c.

2. SAME.—A judgment recorded on 23d November, 1865, was a lien upon the lands of the defendant in the county unaffected by the

defendant, or by his subsequent death. Although plaintiff, after the sale by the defendant, and his death, could not enforce the lien by execution or through the Probate Court, still he could subject the land to his lien by suit in the District Court against the purchaser, if brought within four years from the record of the judgment.

3. RELEASE OF LIEN.—The failure to issue execution within one year after the stay laws were declared unconstitutional, was not a release of the lien established by the record of the judgment while the act of February 14, 1860, was in force on the 23d November, 1865.

APPEAL from McLennan. Tried below before the Hon. Joab H. Banton.

On the 23d day of November, 1865, William Jackson recovered judgment against John B. & I. H. Earle, for the sum of $6,752.55. On the 30th day of November, 1865, a certified transcript of this judgment was filed for record in the office of the county clerk, and recorded the 16th of March, 1866. John B. Earle departed this life; but before and at the time of his death, he and his co-defendant, I. H. Earle, were both insolvent. On the 21st of July, 1869, William Jackson authenticated this judgment as a claim against the estate of John B. Earle, deceased, and set forth in his affidavit of authentication, facts showing that it was a lien on all the real estate in McLennan county owned by John B. Earle on the 30th of November, 1865. This claim was " allowed as sworn to " by Thomas Harrison, administrator of the estate of said John B. Earle, on the 28th day of July, 1869, and approved by the chief justice July 30, 1869.

At the date of the rendition of this judgment, John B. & I. H. Earle owned one-half interest in a tract of twelve and $\frac{40}{100}$ acres of land situated in McLennan county, on which was situated the Waco Factory. On the 28th of February, 1866, the company executed a deed in trust on this property, to secure a debt to George Butler; and at the trust sale, on the 6th of April, 1869, he became the purchaser of the property. On the 15th of November, 1869, this suit was instituted on the probate claim allowance, by John B. Earle's administrator, and judgment of the Probate Court approving

it, to enforce the lien of said claim and judgment on said twelve and $\frac{40}{100}$ acres of land. Thomas Harrison, Earle's administrator, George Butler, and others in possession, were made parties defendant, the petition setting out all the facts relied on as giving a lien.

The court below sustained the demurrer of appellees, on ·the ground that appellant's petition did not show that execution was issued on his judgment against J. B. Earle within one year after execution could by law have issued thereon, and dismissed his petition at his costs. From this judgment Jackson appealed. The only error relied on was the action of the court sustaining the demurrer.

*Herring & Anderson,* for appellants, cited and discussed Paschal's Dig., arts. 3772, 3783, 3954, 3962, 4608; Scott *v.* Rose, 1 Tex., 508; Hall *v.* McCormick, 7 Tex., 269; Graves *v.* Hall, 13 Tex., 382; DeWitt *v.* Jones, 17 Tex., 623; Paschal's Dig., arts. 4608, 7437; Bullock *v.* Ballew, 9 Tex., 499; Waller *v.* Huff, 9 Tex., 534; Taylor *v.* Harris, 21 Tex., 440; Scogin *v.* Perry, 32 Tex., 30; Hargrove *v.* DeLisle, 32 Tex., 175; Moore *v.* Letchford, 35 Tex., 209; Cravans *v.* Wilson, 35 Tex., 52; Williams *v.* Murphy, 36 Tex., 174; Tuft's Administrator *v.* Tufts, 18 Wend., 621; Crosier *v.* Acer, 7 Paige, Ch., 137; Foyhoffer, Administrator, *v.* Busby, 17 Serg. & R., 121; Little *v.* Harvey, 9 Wend., 159; *Ex parte* Peru Iron Company, 7 Cow., 540; Oldham *v.* Erhart, 18 Tex., 147.

*Flint & Graham,* for appellee, discussed the cases relied on by appellant, and cited additional—Paschal's Dig., arts. 7005, 7434; Jones *v.* McMahan, 30 Tex., 719; Freem. on Judg., 336; Bagley *v.* Ward, 37 Cal., 121; Isaac *v.* Swift, 10 Cal., 81; Graff *v.* Kipp, 1 Ed. Ch., 619; 20 Pa., 258; Roe *v.* Swart, 5 Cow., 294.

MOORE, ASSOCIATE JUSTICE.—Though it is the main question which has been discussed by counsel, it is unnecessary

for us to determine whether, under the "act to prevent judgments from becoming dormant, and to create and preserve judgment liens," passed February 14, 1860, a judgment of the District Court becomes dormant by a failure to issue execution upon it within one year from the time at which execution could have been issued. For, if it be conceded that the judgment upon which this action is brought had become dormant because execution had not been issued within the proper time, and though it should be admitted, if John B. Earle was still living, no execution could properly issue, after such delay, without reviving the judgment, still, it by no means follows, that the plaintiff was not entitled, by reason of the record of a certified copy of said judgment in the office of the clerk of the County Court of McLennan county, to a lien upon all the real estate of Earle in said county, and that he could not enforce such lien by the appropriate means given by law; for the continuance of the lien, and appellant's right to enforce it by the aid of the court, as sought in this case, has been heretofore considered and decided in his favor by the court. (Wright v. Rhodes, 42 Tex., 523.)

Under the law of February 14, 1860, although executions were regularly issued, the judgment did not operate as a lien unless a certified copy of the judgment was registered, as therein directed. But when the certified copy of the judgment is properly recorded, the statute distinctly and positively declares, that it shall operate as a lien on all of the real estate of the defendant situated in the county in which it is recorded, and shall continue in force, unless sooner released, for four years from and after its registration, without being reinscribed. The existence and continuance of the lien is in no way connected with or dependent upon the issuance of the execution. It continues until it is lost or expires by the limitation imposed by the statute creating it. (Muir v. Leitch, 7 Barb., 341; Love v. Harper, Humph., 113.) If the lien must be enforced by an execution, it will, of course, be

necessary, if the time within which an execution may issue has elapsed, to revive the judgment before the lien can be made available.

But Jackson could not, by reason of the provision of our probate laws, enforce his lien by an execution against Earle's estate after his death. " A judgment lien constitutes no property or right in the land itself." It merely confers a right to have it sold for the discharge of such lien, to the exclusion of other adverse interests. If the owner conveys the land to another, although it is still charged with the lien, the vendor has no longer any interest in or title to it. And, as Earle had parted with all of his interest in this land before he died, neither his heirs or administrator had any title to or claim upon it. The lien therefore could not be enforced through the Probate Court. And certainly the judgment against Earle would not support or warrant an execution against Butler. Consequently, appellant could only enforce his lien upon the land in Butler's hands, by suit against him for this purpose, as he sought to do in this case.

From what has been said, it is evident that appellant, looking merely to the allegations in his petition and amended petitions, and taking them as true, as we must do, as the case is now presented, was entitled to a lien upon the land in appellees' hands, for the satisfaction of his judgment when he instituted his suit, and that the lien acquired by the registration of the certified copy of his judgment against Earle was not released or lost by his failure to cause executions to issue within one year from the time when an execution might have issued. If the lien thus acquired has been lost, abandoned, or released by anything transpiring subsequent to the institution of the suit, it is not at this time a matter for our consideration.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.